**SHAO YUN CHEN, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General,[1] Respondent.**

No. 07–2479–ag.

United States Court of Appeals, Second Circuit.

April 4, 2008.

Pro se, New York, New York, for Petitioner.

Jeffrey S. Bucholtz, Acting Assistant Attorney General, Richard M. Evans, Assistant Director, Paul Fiorino, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

PRESENT: JOSEPH M. McLAUGHLIN, ROSEMARY S. POOLER, B.D. PARKER, Circuit Judges.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

## SUMMARY ORDER

Petitioner Shao Yun Chen, a native and citizen of the People's Republic of China, seeks review of the May 14, 2007 order of the BIA affirming the December 13, 2005 decision of Immigration Judge ("IJ") Sandy Hom, denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Shao Yun Chen,* No. A98 560 324 (B.I.A. May 14, 2007), *aff'g* No. A98 560 324 (Immig. Ct. N.Y. City Dec. 13, 2005). We assume the parties' familiarity with the underlying facts and procedural history of the case.

It is well established that the submissions of *pro se* litigants must be construed liberally and interpreted to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006). When the BIA issues a short opinion affirming the IJ's decision in part and modifying it in part, we review the IJ's decision as modified by the BIA, confining our review to the rationale of the IJ on which the BIA relied. *See Dong Gao v. BIA,* 482 F.3d 122, 125 (2d Cir.2007). As such, we assume Chen's credibility because the BIA did so. *See also Yan Chen v. Gonzales,* 417 F.3d 268, 271–72 (2d Cir.2005). We review *de novo* questions of law and the application of law to undisputed fact. *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003). We review the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Dong Gao,* 482 F.3d at 126. However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005).

Our review of the record leads us to conclude that substantial evidence does not support the agency's denial of Chen's asylum and withholding of removal claims. We agree with Chen that the agency failed to properly take into account the record evidence. For instance, assuming (as the BIA did) that Chen credibly testified that Chinese officials were aware that he practiced Falun Gong, evidence of China's treatment of Falun Gong adherents "would have been highly relevant" to his fear of persecution. *Rizal v. Gonzales,* 442 F.3d 84, 93 (2d Cir.2006); *see also Chun Gao v. Gonzales,* 424 F.3d 122, 130 (2d Cir.2005). The agency's failure to consider the evidence of conditions in China—however meager it may have been—was therefore in error.[2] *See Rizal,* 442 F.3d at 93.

In addition, it was error for the agency to fail to consider Chen's testimony that one of his fellow Falun Gong adherents was detained, beaten, forced to denounce Falun Gong and to undergo reeducation. *See Tian–Yong Chen v. INS,* 359 F.3d 121, 127–30 (2d Cir.2004). We have observed that the experiences of similarly-situated friends and family are relevant to whether an applicant's fear is well-founded. *See Poradisova v. Gonzales,* 420 F.3d 70, 80 (2d Cir.2005). Our conclusion that the agency's decisions were flawed in this respect is further supported by the wording

---

**2.** We note that the record before the agency contained only three brief news articles discussing China's treatment of Falun Gong adherents and did not include a copy of the most recent human rights report prepared by the U.S. State Department. Where, as here, the record is largely "silent as to [the] contemporary treatment of persons with background grounds similar to [the applicant's]," *Qun Yang v. McElroy,* 277 F.3d 158, 163 (2d Cir. 2002), our review is frustrated. *See also id.* (noting that while the burden of proof rests with the asylum applicant, the government also bears a "burden of production," particularly with respect to "State Department documents").

of the BIA's decision—that police inquiries about Chen's "whereabouts [were] not *alone* sufficient to demonstrate that [he] would be mistreated by the government on account of a protected ground"—which suggests that further evidence may have swayed its analysis of Chen's claim.[3]

Furthermore, the IJ's rejection of three letters Chen submitted because they were not authenticated was flawed for two reasons. First, while the IJ found it significant that the letters failed to include an "attestation that the statements that are being provided are under the penalties of law or being sworn to," all three of the letters did, in fact, contain the statement, "I swear that the above statements are all facts." Second, "[i]t is not entirely clear what the IJ believed should have been done to authenticate the [letters]." *Cao He Lin,* 428 F.3d at 404. If the IJ expected authentication of the documents pursuant to 8 C.F.R. § 1287.6, this was improper because this regulation "is not the exclusive means of authenticating records before an [IJ]," *id.* (internal quotation marks omitted), and because the documents were not "official records [or] public documents," *id.* at 406. While the IJ had broad discretion as to the weight afforded to Chen's letters, *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 342 (2d Cir.2006), his reasons for completely rejecting them were insufficient.

Additionally, Chen correctly argues that he was never asked to explain why he failed to provide medical evidence of his mental or physical condition or evidence of his practice of Falun Gong in the United States. Because the IJ did not give Chen "adequate and meaningful notice" of his desire for this evidence, *Ming Shi Xue v. BIA,* 439 F.3d 111, 122 (2d Cir.2006), it was improper for the agency "to rely on the absence of [that] evidence to hold that [Chen] ha[d] not satisfied his burden of proof."[4] *Cao He Lin,* 428 F.3d at 394–95; *see also* 8 U.S.C. § 1158(b)(1)(B)(ii). Moreover, the IJ erred by failing to assess whether Chen could reasonably obtain the requested evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *see also Niang v. Mukasey,* 511 F.3d 138, 148 (2d Cir.2007).

Moreover, the IJ's demands for additional corroboration of Chen's practice of, or involvement with, Falun Gong in the U.S. reflect an improper focus on Chen's "thoughts, actions, and motives," *Chun Gao,* 424 F.3d at 129, while ignoring the fact that he was eligible for asylum if Chinese authorities would persecute him in the future "on the basis of *their* belief ... that he was a member or supporter of the Falun Gong movement," *id.* at 130 (emphasis added).[5]

Given the aforementioned errors, it cannot be confidently predicted that, examin-

---

3. Moreover, presuming the credibility of Chen's allegations about the multiple visits by police to his parents' home, the BIA's bald statement that these visits did not give rise to a well-founded fear of persecution—without further analysis—was legally insufficient where "[t]he only inference that can reasonably be drawn from these facts is that the visits made by the authorities were not social in nature." *Chun Gao,* 424 F.3d at 131. To the extent that the record contains evidence of China's treatment of Falun Gong adherents, such evidence "clearly indicate[s] a concerted effort on the part of the Chinese government to persecute such individuals." *Id.* at 132.

4. Regarding the IJ's finding that it was implausible that Chen began practicing Falun Gong to improve his self-esteem and to lose weight when there was no evidence that Falun Gong practice could help him achieve those results, we note that this finding was not properly tethered to any record evidence. *See Wensheng Yan v. Mukasey,* 509 F.3d 63, 67 (2d Cir.2007).

5. Similarly, the IJ's finding that Chen's fear of persecution was undermined by the fact that he never served as a master or teacher of Falun Gong was erroneous where the IJ failed to explain how this would affect the possibility that Chinese authorities will persecute

ing all of the relevant evidence and applying the appropriate legal standards, the agency would again find that Chen had failed to establish a well-founded fear of persecution. *See, e.g., Beskovic v. Gonzales,* 467 F.3d 223, 227 (2d Cir.2006). Accordingly, remand is appropriate so that the agency can further analyze Chen's asylum and withholding of removal claims.

While we would ordinarily consider Chen's CAT claim waived because he failed to raise it in his brief to this Court, *Yueqing Zhang v. Gonzales,* 426 F.3d 540, 545 n. 7 (2d Cir.2005), in light of the constellation of errors in the agency's decisions, we also remand this claim for further consideration.

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings consistent with this order. The pending motion for a stay of removal in this petition is DISMISSED as moot.

---

Chen on account of his practice of Falun Gong. *Cf. Rizal,* 442 F.3d at 90.

